IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY BELL, #274164            *
       Petitioner,
   v.                           *   CIVIL ACTION NO. AW-05-153

JAMES V. PEGUESE, et al.         *
       Respondents.
                              ***

## MEMORANDUM

Anthony Bell ("Petitioner") filed this 28 U.S.C. § 2254 attack on his 1997 conviction and 1998 sentence in the Circuit Court for Baltimore County for first degree murder. Paper No. 1. Respondents filed an Answer to the Petition. Paper No. 12. After consideration of all pleadings and exhibits, the Court sees no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

### I. Procedural History

On October 7, 1996, Petitioner was indicted on a charge of first degree murder in the September 1, 1996 death of Brenda Carroll. Paper No. 12, Ex. 1. The facts adduced at trial are as follows:

> Brenda Carroll (Brenda), the victim, was found stabbed and beaten to death in her home. The medical examiner determined that the cause of death was multiple cutting wounds and blunt force injuries. Appellant and the victim had a romantic relationship months before her death. While Brenda lived alone with their five-year-old son and her eight-year-old daughter, appellant maintained a relationship with his son and Brenda, visiting periodically and providing groceries.
>
> Latevia Carroll (Latevia), the victim's daughter, testified that, on the night of her mother's demise, show awoke to hear her dog barking and then heard a "big sound like somebody was stomping or something." She went to the bathroom and then to her mother's bedroom and banged on the door. Appellant, the man she called "Daddy," opened the door. The child recalled there was blood "all over the place." Brenda was lying on the floor with parts of a bed frame on her legs and a VCR on her head. The child saw appellant "stomping" her mother. Appellant then grabbed

    the victim's daughter and threw her on the bed.  Although she yelled, "stop, stop," appellant continued "stomping" Brenda.  The child stated that appellant "left and he came back and stomped her [mother] some more then he left."  Appellant ran down the steps and left the house through the front door.  When the child could not help her mother, she called 911.

Paper No. 12, Ex. 10 at 1-2.

    The case proceeded for trial before Circuit Court Judge Alfred L. Brennan, Sr. on June 16, 1997.  On June 18, 1997, motions for acquittal, raised after the state rested its case and renewed at the conclusion of the defense's case, were denied by Judge Brennan.  *Id*., Ex. 4 at 183 & 314-315.  On June 19, 1997, the jury, after five hours of deliberation, returned its verdict finding Petitioner guilty of first degree murder.  *Id*., Ex. 5 at 80-82.

    Petitioner filed a counseled motion for new trial,[1] arguing that: (1) one of the jurors, Gennaro Rocca, failed to disclose that he knew and worked with the witness Sheila Word, Petitioner's godmother; (2) two jurors were removed for cause during and at the conclusion of the case; (3) the court erred in refusing to voir dire the jurors as to whether they had seen a Baltimore Sun newspaper article published during trial and whether they had observed the prosecutor comforting the state's eyewitness, eight-year-old Latevia Carroll, after she burst into tears; and (4) the verdict was against the weight of the physical evidence.  *Id*., Ex. 7.  Judge Brennan denied the motion on May 13, 1998, and sentenced Petitioner to life without the possibility of parole.  *Id*., Ex. 7 at 8-9 & 30.

    On appeal to the Court of Special Appeals of Maryland, Petitioner contended that: (1) the trial court erred in admitting Frank Jeffress's prior statement into evidence; (2) the trial court erred in not informing the jury that they could have testimony read back to them, in not offering to have

---

[1] Petitioner's motion, filed by trial counsel James A. Gede, was to be heard on October 20, 1997.  Paper No. 12, Ex. 6.  Petitioner, however, voiced dissatisfaction with Mr. Gede at the motions hearing and Judge Brennan postponed the matter to allow Petitioner to petition the Office of the Public Defender for replacement counsel.  *Id*.  Jerri A. Payton, Esquire, argued the new trial motion.

that testimony read back to them, and in not reading it back to them; (3) the trial court erred in refusing to voir dire jurors during trial as requested by defense counsel; and (4) the evidence was insufficient to support Petitioner's conviction. Paper No. 12, Exs. 8 & 9. In an unreported opinion filed on March 10, 1999, the Court of Special Appeals of Maryland affirmed Petitioner's conviction. *Id.*, Ex. 10. A petition for writ of certiorari, raising the same contentions of error, was filed and subsequently denied by the Court of Appeals of Maryland on June 30, 1999. *Id.*, Exs. 11 & 12.

On December 11, 2001, Petitioner filed for post-conviction review in the Circuit Court for Baltimore County and subsequently amended his petition on or about September 26, 2002. *Id.*, Exs. 13 & 15. The petition raised grounds of: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) trial court error; and (4) ineffective assistance of appellate counsel.[2]

---

[2] During the initial post-conviction hearing, claims of ineffective assistance of counsel were raised going to the failure to: (a) adequately prepare a defense; (b) summon material witnesses; (c) investigate the background of state witness Roger Lewis; (d) take exception to inappropriate jury instructions; (e) object to the trial court's questioning or non-questioning of prospective and actual jurors on voir dire, in particular juror number 2; (f) introduce exculpatory evidence of Petitioner's shoe size; (g) object to prejudicial comments made by the state during opening and closing arguments; (h) ensure Petitioner was present at all phases of his trial and proceedings; (i) request a mistrial as a result of juror number two's bias; (j) request a competency hearing regarding the testimony of nine-year old Latevia Carroll; (k) object to the presentation of the 911 transcript to the jury without proper cautionary instruction; (l) object to the relevance of state witness Lawrence Baylor's testimony; (m) advise Petitioner of the consequences of testifying on his behalf; (n) object to Detective Lau's qualifications as an expert attesting to Petitioner's nervous condition during his interrogation; (o) object to jury instructions before jury deliberations; (p) prepare a proper argument for new trial; (q) object to the state's improper impeachment of Roger Lewis (withdrawn); and (r) establish a proper attorney-client relationship prior to and during trial.

Petitioner also raised claims of prosecutorial abuse, claiming that the state: (a) improperly refreshed recollections of Roger Lewis and Rhonda Jeffress through their prior statements; (b) improperly elicited hearsay statements to corroborate Frank Jeffress's testimony; (c) misrepresented the relevance of Lawrence Baylor's testimony in presenting Petitioner as a stalker; and (d) falsified evidence in closing argument.

Petitioner further alleged that the trial court: (a) did not respond to note number 3 from the jury; (b) allowed the jury to review the transcript of the 911 call made by Latevia Carroll; (c) failed to provide the jury with available statements as requested by them; (d) did not voir dire juror number two after receiving a note from that juror; (e) failed to allow Detective Weathers to disclose exculpatory evidence regarding Petitioner's shoe size; (f) allowed witnesses to read statements in the presence of the jury; (g) failed to ensure that Petitioner was present during all stages of trial; (h) allowed the introduction of the 911 transcript to the jury without cautionary instructions; (i) abridged its ruling on the shoe print taken from the crime scene; (j) allowed witnesses to improperly refresh their recollection with prior statements; and (k) made improper remarks to the jury regarding question 8 of the voir dire.

On October 4, 2002, and January 14, 2003, post-conviction hearings were held before Baltimore County Circuit Court Judge John F. Fader, II.[3]  Paper No. 12, Exs. 16 & 17.  Petitioner, trial counsel Gede, and appellant counsel Claudia Cortese testified.  *Id*.  Judge Fader allowed for further briefing.[4]  *Id*., Ex. 17 at 43.  On March 1, 2004, post-conviction relief was denied.  *Id*., Ex., 20.  Petitioner's application for leave to appeal was summarily denied by the Court of Special Appeals on September 17, 2004.  *Id*., Exs. 21 & 22.

Petitioner filed this § 2254 Petition alleging that his conviction should be overturned based upon the ineffective assistance of trial and appellate counsel,[5] misconduct of the prosecutor,[6] trial

---

Finally, Petitioner raised a general ineffective assistance ground with regard to appellate counsel.

[3]   During the course of the post-conviction proceedings, Petitioner withdrew his ineffective assistance challenge regarding Gede's alleged failure to object to the state's impeachment of Roger Lewis.  Paper No. 12, Ex. 16 at 49-50.  In addition, he expanded the scope of his ineffective assistance of appellate counsel ground to claim that appellate counsel failed to raise grounds of trial court error and prosecutorial misconduct.  *Id.*, Ex. 16 at 99.

[4]   Petitioner's argument regarding trial counsel's failure to object to the improper qualification of Latevia Carroll as a competent witness was presented in the briefs.  Paper No. 12, Exs. 18 & 19.

[5]   Petitioner raises some fifteen ineffective assistance of counsel habeas grounds, alleging that trial counsel failed to (a) adequately prepare for a proper defense; (b) conduct an inquiry of Sheila Word to determine her prejudicial influence on a state's witness and her relationship with an impaneled juror; (c) present a second suspect known to the police; (d) properly object to the omission of a cautionary instruction to the jury upon the presentation of the transcript of the 911 recording; (e) object to the trial judge's response and conduct a voir dire of jurors after notes received from the jury showed bias and prejudice; (f) fully object to the suppression of evidence regarding the existence of a second suspect; (g) object to the prosecution's statements in closing argument which allowed the jury to be misled by erroneous evidence; (h) ensure the presence of defendant during all stages of the trial; (i) request a mistrial based upon the existence of bias and prejudice within the jury; (j) object to the improper competency hearing of a minor; (k) object to the relevance of Lawrence Baylor's testimony; (l) object to Detective Lau's failure to present any qualifications of the ability to discern a medical condition while interrogating defendant; and (m) object to the improper highlights placed on the jury instructions defining elements of first degree murder.  Petitioner also alleges that replacement counsel Jerri Payton failed to properly research petitioner's case before presenting a prepared motion for new trial in light of the aforementioned errors (ground n).  In addition, Petitioner alleges that appellate counsel failed to properly investigate or establish any communication with petitioner prior to submitting an appeal brief (ground o).  Paper No. 1.

[6]   Petitioner alleges that the prosecutor: (a) improperly used previously written statements of state witnesses Roger Lewis and Frank Jeffress to refresh their memory; (b) used and presented the testimony of a witness which was corroborated by hearsay; and (c) presented the allegation of a crime of stalking for which Petitioner was not charged.  Paper No. 1.

4

court error;[7] and the post-conviction court erred in failing to respond to every allegation presented in the petition as required under Maryland Rule 4-407.   Paper No 1.

## II. Threshold Considerations

### A.  Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court.   This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of  a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court.  He has exhausted the claims presented here.

### B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

### C.  Procedural Default

Respondents argue that Petitioner's first, second and twelfth assistance of counsel claims going to the adequacy of the defense, the inquiry of witness Sheila Word; and objecting to Detective Lau's qualifications to testify as to Petitioner's medical condition during interrogation are

---

[7]   Petitioner claims that the trial judge failed to: ensure his presence during all stages of trial and conduct a proper competency hearing to determine the ability of Latevia Carroll to understand the value and importance of taking an oath and giving truthful testimony.   He further alleges that the trial judge failed to ensure Petitioner received a fair trial by conducting proper voir dire and improperly allowed a juror who exhibited bias and prejudice to remain within the jury panel until deliberations.  Paper No. 1.

procedurally defaulted. Paper No. 12 at 23, 25, & 43.  Respondents further claim that Petitioner's prosecutorial misconduct and trial court error grounds are also procedurally defaulted. *Id.*, at 48-51.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure.  Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules.  *See id.*; *Bassette v. Thompson*, 915 F.2d 932, 936-37 (4th Cir. 1990); *Collier v. Jones*, 910 F.2d 770, 772-73 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked state procedural rule as the basis for its decision.  *See Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989); *Ashe v. Styles*, 39 F.3d 80, 85-86 (4th Cir. 1994).[8]

The Court agrees with Respondents that three of Petitioner's ineffective assistance of counsel claims have been procedurally defaulted. While Petitioner made an "inadequate defense" claim on collateral review, the claim raised and decided on post-conviction review differed from that presented in the application for leave to appeal. Further, Petitioner's claim regarding counsel's failure to conduct an inquiry of Sheila Word to determine her prejudicial influence on a state's

---

[8] The *Harris* Court emphasized that a federal court has the responsibility to determine whether under the "plain statement rule" a state court in fact based its denial of relief on procedural grounds. *See Harris,* 489 U.S. at 263.

witness and her relationship with an impaneled juror was not fully raised on post-conviction review.[9] Finally, with regard to Petitioner's Sixth Amendment claim regarding Detective Lau's qualifications to testify as to Petitioner's medical condition during interrogation, this allegation was not raised in Petitioner's application for leave to appeal.

The Court also agrees that Petitioner's claims of prosecutorial misconduct and trial court error are procedurally defaulted. The prosecutorial misconduct claims were rejected on post-conviction review by Judge Fader who concluded, in part, that the allegations were a matter for appellate, not post-conviction review.[10] Paper No. 12, Ex. 20 at 12. Further, Petitioner's claims of trial court error were not argued with specificity on application for leave to appeal from the denial of post-conviction relief. Moreover, the post-conviction court rejected the trial error claims, finding that they failed to argue a "proper basis for post-conviction relief." *Id*., Ex. 20 at 13. These latter claims were not raised on direct review and are to be considered waived for purposes of post-conviction review.

The Court's inquiry does not end there. Even where a claim has been procedurally defaulted, this Court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in

---

[9] Petitioner's claim regarding Ms. Word's alleged relationship with juror Gennaro Rocca was only raised in his motion for new trial and in his application for leave to appeal from the denial of post-conviction relief.

[10] Petitioner did raise a challenge to the admission of Frank Jeffress's prior statement into evidence on direct appeal. It was, however, raised as one of trial court error, not prosecutorial abuse.

the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.[11]

> *Schlup* observes that
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id*. at 323; *see also House v. Bell*, 126 S.Ct. 2064, 2077-78 (2006).

Petitioner was afforded an opportunity to demonstrate the existence of cause for his failure to properly raise the aforementioned claims in the state courts and prejudice resulting from this failure. Paper No. 13. He has failed to make the requisite showing which would enable this Court to consider his defaulted claims of ineffective assistance of counsel, prosecutorial abuse, and trial court error. Petitioner has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.[12]

---

[11] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

[12] To the extent that these claims were raised in some form on direct appeal or post-conviction review, the Court sees no reason to overturn the decisions of the Court of Special Appeals of Maryland or the Circuit Court for Baltimore County. Further, after due consideration of the trial, motion for new trial, and post-conviction transcripts, the Court otherwise finds no basis to find in favor of Petitioner as to these claims under applicable Supreme Court precedent.

### III.  Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).   AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law.  *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333,  n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*).  In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id*. at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  "[A] federal habeas court

making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the Court will address the merits of Petitioner's remaining claims.

**A.      Petitioner's Sixth Amendment Claims**

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all

the circumstances." *Id*. at 688.   In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).  A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable.  *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

A criminal defendant's right to effective assistance of counsel continues through a direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if a petitioner can "establish....that counsel omitted significant and obvious issues while pursing issues that were clearly and significantly weaker....Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 ($2^d$ Cir. 1994).  A defendant, however, has not necessarily received ineffective assistance when his counsel fails to present every non-frivolous issue on appeal.  An attorney may decline to appeal a non-frivolous but weaker issue

if doing so would have the effect of diluting stronger arguments on appeal.[13] *See Jones v. Barnes*, 463 U.S. 745, 752 (1983).

Remaining before this Court are eleven ineffective assistance of counsel grounds relating to Mr. Gede's trial representation and one ineffective assistance of counsel claim concerning Ms. Cortese's appellate representation. Petitioner claims that Gede failed to present Roger Lewis[14] as a second suspect. On post-conviction review, Judge Fader found this claim to be without merit, concluding that Petitioner's claim was "nothing more than speculation" and he had failed to project evidence that showed that Roger Lewis had any proper criminal record or "skeleton" in his background that would have allowed an attack on his credibility. Paper No. 12, Ex. 20 at 4-5.

Petitioner also alleges that trial counsel failed to object to the omission of a cautionary instruction to the jury upon the presentation of the transcript of the 911 recording of eight-year old Latevia Carroll. Judge Fader examined the ground on post-conviction review and found that counsel objected to the distribution of the transcript to the jury and "considering the facts of the case there was no error on the part of trial counsel. This is as much as he could have been expected to accomplish." *Id*., Ex. 20 at 9.

Next, Petitioner claims that Mr. Gede should have objected to the trial judge's response and failure to conduct a voir dire of jurors after notes received, particularly from juror number two, showed bias and prejudice. This issue concerns three notes received from three jurors prior to the

---

[13] Appellate counsel cannot be found deficient for failing to present unmeritorious issues and issues not preserved for appellate review. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (strategic and tactical choices regarding the best issues to pursue on appeal "are properly left to the sound professional judgment of counsel"); *Smith v. Murray*, 477 U.S. 527, 534 (1986) (decision to forego a claim that has "little chance of success" does not amount to ineffective assistance of counsel).

[14] Roger Lewis was with the victim the night of the murder and acknowledged that he had sexual relations with Ms. Carroll before leaving her house at approximately 2:00 a.m. on the morning of September 1, 1996. Paper No. 12, Ex. 3 at 26-50. He also identified the Petitioner as arriving at the victim's house at the time he left her residence.

taking of testimony. Upon review of the trial transcript Judge Fader noted that the juror in question was struck at the end of the case and did not sit in deliberation, and further found that Gede had "pushed as hard as he professionally could" to conduct further inquiry into the mind set of the juror and to strike the juror. Paper No. 12, Ex. 20 at 5-6.

Petitioner's sixth ineffective assistance ground goes to trial counsel's failure to fully object to the suppression of evidence (shoe size) regarding the existence of a second suspect. At trial, the state introduced a palm and shoe print taken from the scene of the murder. Evidence of the size of the Fila shoe print was not introduced at trial, but criminal investigation revealed it to be a size 13. At post-conviction review, Petitioner alleged that Roger Lewis, who was with the victim on the night of the murder, wore a size 13 shoe, and that this should have been brought out at trial. Judge Fader resolved this ground against Petitioner, concluding that any decision to keep the size of the shoe out of testimony was a trial tactic, as Petitioner himself wore a size 13 shoe and opening up evidence of the shoe size could have caused the "case to be stronger against Bell." *Id*., Ex. 20 at 6-7.

In addition, Petitioner takes issue with trial counsel Gede's failure to object to the prosecution's statements in closing argument regarding the testimony of state's witness Frank Jeffress, alleging that it permitted the jury to be misled by erroneous evidence.[15] Judge Fader found

---

[15] As noted by Judge Fader, in her closing argument the prosecutor made the following statement:

> Not only do you have this motive, he would not be happy until Brenda was dead. Frank Jeffress testified to that. Well, Frank Jeffress was far from the State's ideal witness. Mr. Roscher certainly had a hard time dealing with Frank Jeffress, and I think you need to use your common sense, again, as to why did Mr. Jeffress give this written statement that he did to the police signed by him, written in nice penmanship, as you'll see back in the jury room, why would he give this statement on September 9 and then be wishy-washy on the stand. Which is true? So, use your common sense.

Paper No. 12, Ex. 5 at 24.

the prosecutor's closing statement to be "fair argument on the facts presented." Paper No. 12, Ex. 20 at 8.

In his eighth ineffective assistance claim Petitioner complains that Mr. Gede failed to ensure his presence during the discussion of the juror notes at the beginning of trial. Judge Fader found that "nothing presented by Bell shows that the verdict would have been any different" and that "even if trial counsel should have made sure that Bell was present, it is impossible to see how this could be said to have influenced the jury verdict in any way." *Id.*, Ex. 20 at 8.

Petitioner next claims that Gede should have requested a mistrial based upon the existence of bias and prejudice within the jury after juror number two was allowed to remain in the jury two days after discovering that the jury was tainted. The post-conviction court succinctly denied this ground concluding that "the juror was dismissed from the case and did not sit on the jury." *Id.*, Ex. 20 at 8-9.

In his tenth ineffective assistance of counsel claim, Petitioner argues that trial counsel should have objected to the improper competency hearing of Latevia Carroll, who was eight years old when she testified against him. Judge Fader stated the following:

> Eight year old Latevia identified Bell as the person present when Brenda Carroll was murdered. The child said she had seen Bell before that same day. Testimony from the trial shows that Latevia Carroll was properly questioned at the time she gave testimony. At pp. 50-51 of the trial transcript the child said she knew the difference between telling the truth and telling a lie and explained that to the jury. She said she was going to tell the truth. Questioned regarding the color of the judge's robe, the carpet, in the courtroom, etc. she adequately demonstrated that she knew the difference between telling the truth and a lie.
>
> This ground is resolved against the Petitioner.

*Id.*, Ex. 20 at 9.

In his eleventh ineffective assistance of counsel ground, Petitioner claims that Mr. Gede failed to object to the relevance of Lawrence Baylor's testimony. Lawrence Baylor, a boyfriend of

the victim, gave testimony as to his relationship with the deceased and how Petitioner would show up, unannounced, wherever Baylor and Brenda Carroll were. Paper No. 12, Ex. 4 at 98-104. Judge Fader found Baylor's testimony relevant, concluding that "the state wanted this witness to insure that the jury knew that Bell was stalking the victim" and that "no basis exists upon which the court could determine that any objection to this testimony would have been successful...." *Id.*, Ex. 20 at 10.

Petitioner next claims that trial counsel should have raised an objection to the improper highlights placed on the jury instructions defining the elements of first degree murder.[16] Judge Fader found that the instructions for first degree murder were proper and there was no reason for an objection to be made. *Id.*, Ex. 20 at 11.

As his fourteenth Sixth Amendment ground, Petitioner argues that replacement counsel, Jerri Peyton, failed to properly research Petitioner's case before presenting a prepared motion for new trial in light of the aforementioned errors. Judge Fader made the following statement on post-conviction review:

> Petitioner testified that he acquired Jerri Peyton, Esq. as an attorney prior to the filing of this motion for a new trial. Difficulties arose between Gede and Bell. A postponement of the new trial hearing was given and new counsel was obtained.
>
> The court does not understand the complaint made by Bell. This ground is resolved against him. Argument was presented by a competent attorney.

*Id.*, Ex. 20 at 11.

As his final Sixth Amendment claim, Petitioner argues that appellate counsel failed to adequately investigate or establish any communications with Petitioner prior to submitting an appeal brief. Judge Fader stated:

---

[16] Petitioner does not assert the exact reason for challenging Judge Fader's first degree murder instructions.

> Bell alleges that appellate counsel did not properly argue the difference in shoe size, that Lewis read his entire statement in front of the jury, that the individual voir dire to Juror No. 2 was incorrect, and that he was denied the right to be present during all stages of the trial.
>
> No error was seen as applicable to trial counsel. No error is seen here. This ground is resolved against Petitioner.

Paper No. 12, Ex. 20 at 13.

The Court has analyzed Petitioner's non-procedurally defaulted Sixth Amendment claims and reviewed all exhibits, including the transcripts of the four-day jury trial, the motion for new trial proceedings, and the post-conviction hearings, the latter of which includes the testimonies of trial attorney Gede and appellate counsel Cortese. When applying the aforementioned standards under *Strickland* and *Barnes*, the undersigned finds no basis to overturn the decisions of the state court. At trial there was eyewitness identification and physical evidence, along with an abundance of circumstantial evidence, that implicated Petitioner in Brenda Carroll's brutal murder. This included: the eyewitness testimony of Latevia Carroll and a tape of her 911 telephone call at approximately 5:00 a.m. on the morning of September 1, 1996, in which she identified Petitioner as the man who "stomped" her mother; latent finger prints and tread patterns of a Fila shoe taken from bloody surfaces at the home of the victim which placed Petitioner at the crime scene; and the testimonies of forensic technicians, detectives, and individuals who knew the victim and Petitioner. Also Petitioner testified that he was twice at the home of the victim on the night of the murder, saw her blood-covered body, "touched" the victim, and departed the house without calling authorities. After weighing the evidence and the credibility of testimony, the jury found Petitioner guilty.

Petitioner has failed to show that trial and appellate counsel were ineffective as alleged or that their actions or inactions so prejudiced his case that the jury verdict or decisions of the

appellate court would have been different. The state court's review of Petitioner's claims was reasonable and withstands scrutiny under 28 U.S.C. § 2254(d)(1) and (2).

**B.     Post-Conviction Court Error**

Petitioner claims that Judge Fader violated Maryland Rule 4-407 by failing to respond to every allegation raised on post-conviction review. This ground is subject to dismissal. A claim based on violations of state law or procedure that does not constitute an infringement of a specific constitutional protection or fundamental fairness is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991). Further, infirmities in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988).

### IV. Conclusion

In light of the foregoing rulings, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.


Date:   January 24, 2007                                /s/
                                                Alexander Williams, Jr.
                                                United States District Judge